PEOPLE v JIMMIE McCRACKEN

Docket No. 77-3976. Submitted June 3, 1980, at Lansing.—Decided
October 6, 1980.

Jimmie L. McCracken was convicted of arson, Oakland Circuit
Court, Steven N. Andrews, J. Defendant appeals, alleging that
he was denied his right to a speedy trial, that certain evidence
was improperly seized and therefore should not have been
admitted at trial, that the trial court erroneously allowed
impeachment of the defendant's testimony on a collateral
matter, and that he was prejudiced by certain remarks of the
prosecutor. *Held:*

1. There was a 31-month delay between defendant's arrest
and his trial, thus there is a presumption of prejudice to the
defendant. The burden is on the prosecution to demonstrate a
lack of prejudice, because all but seven months of the delay
were attributable to the prosecution. The prosecution has met
this burden. The length of the delay and the reason for it are
outweighed by the defendant's failure to assert his right to a
speedy trial and by the lack of prejudice resulting from the
delay.

2. Evidence was obtained by the fire department in an
investigation into the cause of the fire conducted shortly after
the fire was extinguished. There was no requirement for a
warrant for this activity, and the evidence obtained was prop-
erly admitted at trial.

3. During cross-examination the defendant testified regarding
a collateral matter, and the prosecutor was allowed to produce
a witness to rebut the defendant's collateral testimony. This

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law § 251 *et seq.*
[3] 17 Am Jur 2d, Continuance § 2.
[4] 21 Am JUr 2d, Criminal Law § 253 *et seq.*
  Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.
[5] 21 Am Jur 2d, Criminal Law §§ 251, 255.
[6] 35 Am Jur 2d, Fires § 4.
[7] 81 Am Jur 2d, Witnesses § 474 *et seq.*
[8] 5 Am Jur 2d, Appeal and Error § 624.

was error. However, the error was harmless under the circumstances of the case.

4. Defendant failed to object at trial to the allegedly prejudicial remarks of the prosecutor, precluding appellate review absent manifest injustice. No manifest injustice was created by the remarks in question.

Affirmed.

1. CRIMINAL LAW — SPEEDY TRIAL — FACTORS CONSIDERED.

The four factors to be considered when determining whether a defendant was denied his right to a speedy trial are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant resulting from the delay; inquiry is not made into the last three factors unless the length of the delay was such as to give rise to a presumption of prejudice.

2. CRIMINAL LAW — SPEEDY TRIAL — LENGTH OF DELAY — PRESUMPTION OF PREJUDICE.

A presumption of prejudice arises where a delay in bringing a defendant to trial exceeds 18 months.

3. CRIMINAL LAW — TRIAL — ADJOURNMENTS — REASON FOR ADJOURNMENT.

Adjournments of a criminal trial which are for "undisclosed reasons" are attributable to the state.

4. CRIMINAL LAW — SPEEDY TRIAL — ASSERTION OF RIGHT — WAIVER.

A defendant's failure to assert his right to a speedy trial does not constitute a waiver of that right.

5. CRIMINAL LAW — SPEEDY TRIAL — LENGTH OF DELAY — PREJUDICE.

The burden is on the prosecution to demonstrate that a defendant suffered no prejudice as a result of a 31-month delay in bringing the defendant to trial where only seven months of the delay are attributable to the defendant.

6. SEARCHES AND SEIZURES — ARSON — WARRANT REQUIREMENT — EVIDENCE.

Fire officials are not required to obtain a warrant to remain in a building for a reasonable time after a fire has been extinguished to investigate the cause of the fire, and evidence of arson found during such an investigation may properly be seized.

7. WITNESSES — COLLATERAL MATTERS.

Generally, a party who raises a collateral matter during the

examination of a witness is bound by the answer of that witness.

8. APPEAL — CRIMINAL LAW — PROSECUTOR'S REMARKS — PRESERV-
ING QUESTIONS.
   Allegedly improper remarks and questions of the prosecutor which were not objected to at trial will not be reviewed on appeal in the absence of manifest injustice.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Ronald Weitzman,* Assistant Prosecuting Attorney, for the people.

*Smith, Magnusson & Chartrand* (by *Shamoon Zakaria),* for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

DANHOF, C.J. Defendant, Jimmie Lee Mc-Cracken, was convicted by a jury of arson, contrary to MCL 750.72; MSA 28.267, on May 31, 1977. He was sentenced on July 5, 1977, to a prison term of from 7 to 20 years and now appeals as of right.

Defendant first contends that he was denied his Sixth Amendment right to a speedy trial. In *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), and *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972), the Michigan Supreme Court adopted the balancing test set forth by the United States Supreme Court in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). That test requires consideration of four factors in determining whether a defendant was denied his right to a speedy trial: (1) the length of the delay, (2) the

* Circuit judge, sitting on the Court of Appeals by assignment.

reason for the delay, (3) the defendant's assertion of his right and (4) prejudice to the defendant resulting from the delay. The first factor, length of the delay, is considered as a triggering mechanism whereby inquiry into the other factors in the balancing test is not made unless the delay is such that a presumption of prejudice arises. The Michigan Supreme Court has held that the presumption of prejudice arises where the delay exceeds 18 months. *People v Collins, supra,* 695. The 31-month delay between defendant's arrest and trial in the present case thus triggers our application of the four-factor balancing test.

In the present case, defendant was arrested on October 28, 1974, and trial was scheduled for January 24, 1975. The trial was adjourned and rescheduled a total of 18 times during the period from January, 1975 to March, 1977. Three of the adjournments resulted from the defense counsel's inability to attend trial on the scheduled dates, while the remaining adjournments were for "undisclosed reasons" and are therefore attributable to the state. *People v Bennett,* 84 Mich App 408; 269 NW2d 618 (1978). A two-month delay during the summer of 1976 was caused by defendant's failure to appear for a scheduled preliminary examination. He was also unavailable for nearly two months in the fall of 1978 because he was being tried in an unrelated case. We find only seven months of the delay were attributable to defendant.

During the period from October 28, 1974, to April 26, 1977, defendant never asserted his right to a speedy trial. On the latter date he filed a motion to dismiss for lack of a speedy trial. The motion was argued on May 16 and 17, 1977, and denied. The trial commenced on May 17. A defen-

dant's failure to assert his right to a speedy trial does not constitute a waiver of that right; however, it does make it difficult to prove that he was denied a speedy trial. *People v Collins, supra,* 692. The facts in the present case suggest that defendant did not want a speedy trial. He was out on bail until January of 1977, when he was incarcerated due to an unrelated offense. Defendant's assertion that he delayed his speedy trial motion because of the presecution's tactics is incredible in view of the overall delay between arrest and trial.

The burden is on the prosecution in the instant case to demonstrate that defendant suffered no prejudice as a result of the delay. *People v Collins, supra,* 695. We believe that the prosecution, in its arguments contrary to defendant's claims of prejudice, has met its burden. Defendant claims that the delay caused the loss of two important witnesses, who would have testified in his behalf, due to death and unavailability. The first such witness, defendant's half-brother Thomas McCracken, who had died, allegedly would have rebutted the testimony of prosecution witness Michael Thomas. Loss of this impeachment testimony was not prejudicial however, because Thomas's testimony was corroborated by two other prosecution witnesses. Defendant claims the other lost witness, Melvin Stinson, would have testified about a suspicious car present when the fire broke out. At the hearing on defendant's motion to dismiss, defense counsel stated that he had never interviewed Mr. Stinson, did not know whether the man was alive or dead, and had attempted to subpoena him for the first time the day before. Under these circumstances, we refuse to accept defendant's claim regarding the substance of Mr. Stinson's testimony and find no prejudice in the loss of this witness. We also find

no merit in defendant's allegations that the delay caused domestic strife resulting in his divorce.

We conclude, based on an overall balancing of the *Barker* factors, that defendant was not deprived of his right to a speedy trial. Two of the factors, length of the delay and reason for the delay, favor defendant. We find these factors outweighed by the defendant's failure to assert his right and lack of prejudice resulting from the delay.

Defendant next argues that certain evidence gathered at the scene of the fire was the product of an unlawful warrantless search and seizure and was improperly admitted over objection at trial. Defendant was accused of setting fire to his Ferndale residence on the night of September 14, 1973. The Ferndale Fire Department put out the blaze and the disputed evidence, consisting of photographs and carpet samples, was obtained during an on-the-scene investigation into the cause of the fire conducted by a city fire inspector shortly after the fire was extinguished. Defendant relies on *People v Tyler,* 399 Mich 564; 250 NW2d 467 (1977), where the Court held, based on Federal cases and the Fourth Amendment, that a warrant is required for subsequent reentry and search of the premises once a fire has been extinguished and the firemen have departed. The case was appealed to the United States Supreme Court, which affirmed but expressed a different opinion as to when the need for a warrant arises:

"*[People v Tyler]* * * * may be read as holding that the exigency justifying a warrantless entry to fight a fire ends, and the need to get a warrant begins, with the dousing of the last flame. 399 Mich, at 579, 250 NW2d, at 475. We think this view of the firefighting function is unrealistically narrow, however. Fire offi-

cials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, *officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished.* And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional." *Michigan v Tyler,* 436 US 499, 509-510; 98 S Ct 1942; 56 L Ed 2d 486 (1978). (Emphasis added.)

We follow the United States Supreme Court in matters of Federal constitutional interpretation, *People v Martin,* 78 Mich App 518; 260 NW2d 869 (1977), and therefore find that the search and seizure in the present case was proper. The search occurred within a reasonable time after the blaze was extinguished. See, *People v Farnsley,* 94 Mich App 34; 287 NW2d 361 (1979).

The third issue raised by defendant in this appeal is whether the trial court erred reversibly by permitting improper impeachment of his testimony concerning a collateral issue. Prosecution witness James Thomas testified that he borrowed money from a bank and that defendant had co-signed for the loan. Defendant, during cross-examination, denied any recollection of whether he had co-signed for the loan, but stated that ordinarily he would know if he had engaged in such a transaction. Over objection, the prosecutor was allowed to produce a bank employee who testified that defendant had indeed co-signed for the loan. The

court responded to defendant's claim that the matter was collateral to the issue at hand by stating that the evidence showed defendant's lack of capacity to recall facts and was thus material.

Generally, a party who raises a collateral matter during the examination of a witness is bound by the answer of that witness. *People v Lauzon,* 84 Mich App 201; 269 NW2d 524 (1978). The trial court erred in allowing the bank employee's testimony in the instant case under this rule, since whether or not defendant had co-signed the note was a collateral issue. However, we find that the error was harmless under the circumstances. The prosecutor attempted to impeach defendant for what he thought was a legitimate purpose. We cannot say that the error which resulted was so offensive to the maintenance of a sound judicial process that it could never be regarded as harmless. Furthermore, in view of the overwhelming evidence that defendant committed arson, we find that the error was harmless beyond a reasonable doubt. The physical evidence clearly indicated that the fire was set by someone, and three prosecution witnesses testified regarding defendant's involvement in planning and carrying out the arson. See, MCL 769.26; MSA 28.1096.

Finally, defendant claims that his right to a fair trial was prejudiced by certain remarks and questions of the prosecutor. None of the allegedly improper remarks were objected to at trial; therefore, only error which resulted in manifest injustice was preserved for appeal. MCL 769.26; MSA 28.1096, *People v Clemons,* 91 Mich App 68, 73; 282 NW2d 838 (1979), *remanded for resentencing,* 407 Mich 939 (1979). We have reviewed the record and find that there was no manifest injustice.

Affirmed.