# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

ROBERT MICHAEL CARLTON,

Defendant-Appellee.

FOR PUBLICATION
November 24, 2015
9:15 a.m.

No. 321630
Isabella Circuit Court
LC No. 13-011210-AR

Before: M. J. KELLY, P.J., and MURRAY and SHAPIRO, JJ.

M. J. Kelly, J.

In this dispute over the proper interpretation of the Michigan Medical Marihuana Act,[1] see MCL 333.26421 *et seq.*, the prosecutor appeals by leave granted the circuit court's order affirming the district court's decision to dismiss the charges against defendant, Robert Michael Carlton, and denying the prosecutor's request to amend the complaint. On appeal, we must determine whether the immunity and defenses provided under the Medical Marihuana Act apply to a person who smokes marijuana in his or her own car while that car is parked in the parking lot of a private business that is open to the general public. We conclude that the protections do not apply under those circumstances. We also conclude that the circuit court erred when it affirmed the district court's denial of the prosecutor's motion to amend the complaint. Accordingly, for the reasons more fully explained below, we reverse and remand for further proceedings.

## I. BASIC FACTS

The parties do not dispute the basic facts. In August 2013, Carlton went to Soaring Eagle Casino and parked his car in the casino's parking lot. At around 11:30 at night, security personnel, who were monitoring the casino's live-feed cameras, saw Carlton smoking what they believed to be marijuana inside his car. The security personnel called police officers and the officers went to the parking lot to investigate. Carlton admitted to the officers that he had been smoking marijuana and the officers saw a marijuana roach on the car's dashboard. The officers

---

[1] Although the Legislature used the spelling "marihuana" in the act, this Court uses the more common spelling, "marijuana," in its opinions.

-1-

searched the car and found four bags of marijuana in a Styrofoam cooler that was on the floor board of the front passenger's seat. Carlton was the only person in the car at the time.

The prosecutor charged Carlton with misdemeanor possession of marijuana premised on the evidence that Carlton was smoking marijuana in a public place. MCL 333.7403(2)(d). Carlton's trial lawyer moved to dismiss the charge before the district court.

The district court held a hearing on the motion in October 2013. Carlton's lawyer stated that the evidence showed that Carlton was validly registered as a patient under the Medical Marihuana Act and was smoking in his car. Because his car was not a place open to the public, she argued that Carlton was immune from prosecution under § 4 of the act. See MCL 333.26424(a). The prosecutor disagreed and argued that the fact that Carlton was in his car was irrelevant; the car was located in the casino's parking lot, which is a public place. The prosecutor noted that the act specifically provided that it does not permit registered patients to smoke marijuana in a public place. See MCL 333.26427(b)(3)(B). Accordingly, he maintained, Carlton was not entitled to immunity under the act. The prosecutor also requested leave to amend the complaint to add a charge of improperly transporting medical marijuana. See MCL 750.474(1).

The district court issued an opinion and order in November 2013. The district court determined that a person is not in a public place when he or she is in his or her car, even if the car is parked in a parking lot that is open to the public. The district court granted Carlton's motion for that reason. The district court also denied the prosecution's request for leave to amend the complaint.

The prosecutor appealed the district court's decision to the circuit court. The prosecutor argued that the district court erred when it determined that a car is not a public place even when parked in a public parking lot. The prosecutor also argued that the district court abused its discretion when it denied leave to amend the complaint.

The circuit court held a hearing on the appeal in February 2014 and issued its opinion and order in March 2014. The circuit court agreed that a privately owned automobile is not a public place within the meaning of MCL 333.26427(b)(3)(B). For that reason, the circuit court affirmed the district court's decision to dismiss the charge and deny leave to amend.

The prosecutor then appealed in this Court and this Court granted leave in September 2014, but only to consider whether the circuit court erred when it affirmed the district court's denial of the prosecutor's motion for leave to amend.[2] The prosecutor appealed this Court's order to our Supreme Court in October 2014. The prosecutor asked the Supreme Court to remand the matter to this Court for consideration of both issues. In February 2015, the Supreme Court granted the prosecutor's request for a remand to this Court for consideration of both issues. See *People v Carlton*, 497 Mich 957; 858 NW2d 467 (2015).

---

[2] See *People v Carlton*, unpublished order of the Court of Appeals, entered September 18, 2014 (Docket No. 321630).

## II. MOTION TO DISMISS

### A. STANDARD OF REVIEW

The prosecutor first argues that the lower court erred when it interpreted the phrase "any public place," as used in MCL 333.26427(b)(3)(B), to exclude privately owned cars that are parked in parking lots that are open to the general public. This Court reviews de novo whether the trial court properly interpreted and applied the Medical Marihuana Act. *People v Anderson (On Remand)*, 298 Mich App 10, 14-15; 825 NW2d 641 (2012).

### B. THE PUBLIC PLACE EXCEPTION

A "qualifying patient who has been issued and possesses a registry identification card" is generally immune from prosecution for possession of medical marijuana under § 4 of the act. MCL 333.26424(a). For purposes of this appeal, we assume that Carlton is a qualifying patient and had in his possession a valid registry identification card when he smoked the marijuana underlying the charge at issue. See MCL 333.26423(i) and (j). Accordingly, Carlton could qualify for immunity from prosecution under § 4. Carlton might also be able to assert the "medical purpose for using" marijuana as a defense under § 8 of the act to the prosecution for possessing marijuana. See MCL 333.26428(a).

Although the act provides immunity under § 4 and a defense under § 8, both the immunity and defense provisions are subject to limitation. When the electors approved the Medical Marihuana Act, they provided that the "medical use of marihuana is allowed" only to the extent that the medical use was "carried out in accordance" with the act. MCL 333.26427(a). They also specifically stated that the act does not "permit any person" to smoke marijuana "in any public place." MCL 333.26427(b)(3)(B). Because the act cannot be interpreted to "permit" a person to smoke marijuana in any public place and the medical use of marijuana is allowed— that is, permitted—only to the extent that it is carried out in accordance with the act, it necessarily follows that any person who smokes marijuana in "any public place" is not entitled to the immunity provided under § 4. *Id.* Similarly, the electors stated that the defense described under § 8 applied to every prosecution involving marijuana "[e]xcept as provided" under MCL 333.26427(b). MCL 333.26428(a). These provisions in effect create an exception to the protections afforded under § 4 and § 8 of the act for situations where the patient engages in the conduct listed under MCL 333.26427(b). Consequently, if Carlton was smoking marijuana in a public place, he would not—as a matter of law—be entitled to assert either the immunity provided under § 4, or the defense provided under § 8, as a challenge to his prosecution for possession of marijuana in violation of MCL 333.7403(2)(d).

It is undisputed that Carlton was smoking marijuana in plain sight while seated in his own car and that his car was parked in a parking lot that was open to the public. On appeal, the parties ask this Court to interpret the phrase "public place," as used MCL 333.26427(b)(3)(B), by reference to cases involving other crimes, such as gross indecency, see *People v Lino*, 447 Mich 567; 527 NW2d 434 (1994), or disorderly conduct, see *People v Favreau*, 255 Mich App 32; 661 NW2d 584 (2003), which involve acts done in public or in a public place, or by examining the privacy expectations informing search and seizure cases, see *United States v Jones*, 565 US ___; 132 S Ct 945; 181 L Ed 2d 911 (2012). We do not agree that the phrase "public place" has

acquired a technical or peculiar meaning in the law. See *People v Bylsma*, 493 Mich 17, 31; 825 NW2d 543 (2012). Rather, this phrase must be given its plain and ordinary sense, as it would have been understood by the electors. See *People v Mazur*, 497 Mich 302, 308; ___ NW2d ___ (2015).

In adopting the Medical Marihuana Act, the electors balanced the needs of persons suffering from medical conditions, who might benefit from the medical use of marijuana, against the public's continued interest in restraining the harmful effects of recreational marijuana use. See MCL 333.26422; see also *People v Redden*, 290 Mich App 65, 93; 799 NW2d 184 (2010) (opinion by O'CONNELL, P.J.) ("[T]he [Medical Marihuana Act] reflects the practical determination of the people of Michigan that, while marijuana is classified as a harmful substance and its use and manufacture should generally be prohibited, law enforcement resources should not be used to arrest and prosecute those with serious medical conditions who use marijuana for its palliative effects."). The electors chose to exclude patients who smoke medical marijuana in any public place from the protections of the act as part of the balancing of these interests, and, presumably, to assure the public and voters that the smoking of marijuana—even for medical purposes—would not intrude into the public sphere. MCL 333.26427(b)(3)(B). A "public place" is generally understood to be any place that is open to or may be used by the members of the community, or that is otherwise not restricted to the private use of a defined group of persons. See, e.g., *The Oxford English Dictionary* (2d ed, 1991) (defining the adjective "public" to mean "open to, may be used by, or may or must be shared by, all members of the community; not restricted to the private use of any person or persons; generally accessible"). As Michigan courts have recognized, in common usage, when persons refer to a public place, the reference typically applies to a location on real property or a building. See, e.g., *People ex rel Cheever v Harding*, 343 Mich 41, 47; 72 NW2d 33 (1955) (stating that, as applied to an inclosure, room, or building, a public place is one where, by general invitation, members of the public attend for reasons of business, entertainment, instruction, or the like, and are welcome as long as they conform to what is customarily done there); *People v DeVine*, 271 Mich 635, 640; 261 NW 101 (1935) (holding that the front porch of a private dwelling that was frequented by neighbor children was a public place); *Fuller v Hessler*, 226 Mich 311, 313; 197 NW 524 (1924) (stating that a privately owned vacant lot is not a public place within the meaning of an ordinance referring to streets, alleys, or public places); *Westland v Okopski*, 208 Mich App 66, 75-77; 527 NW2d 780 (1994) (holding that the Knights of Columbus Hall is a public place); *People v Adams*, 150 Mich App 181, 184; 388 NW2d 254 (1986) (recognizing that the front steps leading into an apartment are a public place). The parking lot of a business that is open for the general public's use—even if it is intended for the use of the business' customers alone—is a public place in this ordinary sense. See *Cheever*, 343 Mich at 46-47 (holding that the building, which the defendants characterized as a hotel, was a public place because it was open for use by the general public). The question on appeal is whether a person ceases to be in the public place (a parking lot that is open for use by the general public) while he or she is in a privately owned vehicle. For purposes of this statute, we do not find that to be the case.

It is important to note that, even though smoking medical marijuana in a "public place" might or might not be done 'in public,' the electors did not except the smoking of medical marijuana 'in public' from the protections afforded under the act; rather, they provided that a person who smokes medical marijuana in "any public place" would not be entitled to the immunity provided under § 4, or the defense provided under § 8.[3] MCL 333.26427(b)(3)(B). Because the electors chose to define the exception by reference to the character of the place rather than by the specifics attending the act, whether members of the general public might stumble upon the patient smoking the medical marijuana, or otherwise detect the patient's smoking, is not relevant to determining whether the exception applies. For similar reasons, the fact that a public place was intended to be used in private does not alter the public character of that place. A person who goes into a restroom that is generally open to the public, enters a stall, and closes the door, does not thereby transform the stall from a public place to a private place. Stated another way, even if a patient successfully conceals his or her smoking of medical marijuana from detection, the patient will not be entitled to the protections of the act if he or she smoked the marijuana in a public place. The relevant inquiry is whether the place at issue is generally open to use by the public without reference to a patient's efforts or ability to conceal his or her smoking of marijuana.[4]

A person's car is private property, and, in that sense, one might characterize the interior space of a car as a "place" that is private, or at least privately owned. However, a parking lot, which is open to the general public, is open for the specific purpose of allowing the members of the public to park their vehicles.[5] Nevertheless, we do not agree that permitting the general public to use the lot to park private vehicles transforms the public character of the lot such that a patient who smokes marijuana while seated in a vehicle parked in the parking lot ceases to be in the public lot. The lot remains a public place and the fact that a person in a vehicle occupies a place that can be characterized as private in some limited sense does not alter the fact that the person is at the same time located in a public place. See *People v Johnson*, 12 Mich App 139, 143-144; 162 NW2d 667 (1968) (characterizing the authorities discussing unreasonable searches and seizures as "inapposite" in a case involving whether a defendant who was passed out in his car, which was parked on a public street, was disorderly in a public place: "But the point is that

---

[3] We find it noteworthy that the electors specifically excepted smoking medical marijuana—as opposed to other forms of marijuana delivery—from the protections afforded under the act when done in "any public place." MCL 333.26427(b)(3)(B). By allowing other forms of medical marijuana use in public places, but removing the protections for smoking marijuana in public places, the electors expressed a clear policy choice: smoking marijuana in a public place should continue to be criminally prosecuted, even when done for a medical purpose.

[4] Conversely, it follows that, if a patient smokes his or her medical marijuana in a private place, such as his or her home, the fact that his or her smoking might be visible to members of the public through a window would not transform his or her home into a public place.

[5] Because it is not now before us, we do not consider whether the lease or license of a parking spot or space, such as a space for a recreational vehicle at a camp site, might transform the public character of the spot or space for the term of the lease or license.

this defendant, though in his car, was in a 'public place' and the authorities are ample in support of that proposition."). And, as with the bathroom stall, whether the members of the general public are able to see the person smoking medical marijuana does not alter the public character of the place. Therefore, we hold that the exception stated under MCL 333.26427(b)(3)(B) applies to persons who smoke medical marijuana in a parking lot that is open to use by the general public, even when smoking inside a privately owned vehicle, and even if the person's smoking is not directly detectable by the members of the general public who might be using the lot.

This construction of the phrase "any public place" is also consistent with the electors' decision to separately exclude smoking marijuana on "any form of public transportation" from the protections afforded under the act. MCL 333.26427(b)(3)(A). If the electors understood the term "place," as used in the phrase "any public place," to include the interior of vehicles, there would have been no need to separately exclude smoking on "any form of public transportation" from the protections afforded by the act, because smoking marijuana on public transportation would necessarily constitute smoking marijuana in a public place. See *People v Miller*, 498 Mich 13, 25; 869 NW2d 204 (2015) (stating that courts must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory).

Here, the undisputed evidence showed that Carlton was smoking marijuana in a car that was parked in a parking lot that was open to the general public. Consequently, under MCL 333.26427(b)(3)(B), Carlton was not entitled to assert the immunity provided under § 4 of the act, or the defense provided under § 8 of the act, and the circuit court erred when it determined otherwise; the circuit court should have reversed the district court's decision to dismiss the possession charge and remanded the matter to the district court for further proceedings.

### III. LEAVE TO AMEND

The prosecutor next argues that the circuit court erred when it determined that the district court did not abuse its discretion when it denied leave to amend the complaint to include a charge that Carlton improperly transported medical marijuana in violation of MCL 750.474(1). A trial court has the discretion to "amend an information at any time before, during, or after trial." *People v Goecke*, 457 Mich 442, 459; 579 NW2d 868 (1998), citing MCL 767.76; *People v Hutchinson*, 35 Mich App 128, 132-134; 192 NW2d 395 (1971) (discussing the nature of a complaint and treating a motion to amend the complaint in the same manner as a motion to amend the information). The trial court may allow the prosecutor to amend the complaint to include a new charge, if amendment would not cause "unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend." *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993); see also MCR 6.112(H).

In this case, the district court did not state a rationale in support of its decision to deny the prosecutor's motion for leave to amend. Therefore, this Court—as was true of the circuit court before us—is left to speculate about the reasoning that led the district court to conclude that the request for amendment would unacceptably prejudice Carlton. The fact that the new charge might carry a more severe penalty is not a sufficient basis to conclude that Carlton would be unacceptably prejudiced. See *Hunt*, 442 Mich at 365. Similarly, the fact that Carlton may not

have immunity or a defense under the Medical Marihuana Act is not a basis for concluding that he would be prejudiced; the relevant inquiry is whether he would have a fair opportunity to meet the charges against him. *Id.* at 364. At this stage in the prosecution, it is also difficult to see how Carlton might be unduly prejudiced by granting leave to amend. See *People v Munn*, 25 Mich App 165, 167; 181 NW2d 28 (1970) (stating that, at such an early stage in the process, the prosecutor could permissibly have dismissed the complaint and warrant and then immediately issued a new complaint). Moreover, this does not appear to be a case involving prosecutorial vindictiveness. See *People v Jones*, 252 Mich App 1, 7-8; 650 NW2d 717 (2002). Nevertheless, given our resolution of the first issue, rather than deciding this issue on the undeveloped record, we elect to exercise our discretion to grant further or different relief. MCR 7.216(A)(7).

Because we have already determined that it is necessary to remand this matter to the district court for further proceedings, we vacate the district court's opinion and order denying the prosecutor's request for leave to amend. On remand, if the prosecutor elects to again move to amend the complaint, the trial court should consider the motion and articulate a sufficient basis to permit meaningful appellate review of its decision.

## IV. CONCLUSION

The circuit court erred when it affirmed the district court's dismissal of the possession of marijuana charge against Carlton on the ground that Carlton had immunity under § 4, or a defense under § 8 of the Medical Marihuana Act. Because Carlton was smoking marijuana in a "public place," MCL 333.26427(b)(3)(B), he could not assert the immunity or defense provided under that act. Consequently, the circuit court should have reversed the district court's decision and ordered further proceedings.

For the reasons stated above, we reverse the circuit court's opinion and order affirming the district court's opinion and order. We vacate both opinions and orders in full and remand this matter to the district court for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Christopher M. Murray

-7-